UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

WILLIE L. WHITE,                          )
                                          )
                    Plaintiff,            )
                                          )
v.                                        )          No. 1:21-CV-57-DCP
                                          )
KILOLO KIJAKAZI,[1]                       )
Acting Commissioner of Social Security,   )
                                          )
                    Defendant.            )

**<u>MEMORANDUM OPINION</u>**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 9].  Now before the Court are

Plaintiff's Motion for Judgment on the Administrative Record [Doc. 13] and Defendant's Motion

for Summary Judgment [Doc. 15].  Willie L. White ("Plaintiff") seeks judicial review of the

decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo

Kijakazi ("the Commissioner").  For the reasons that follow, the Court will **DENY** Plaintiff's

motion and **GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On October 19, 2018, Plaintiff filed an application for disability insurance benefits and

supplemental security income benefits pursuant to Title II and XVI of the Social Security Act, 42

U.S.C. §§ 401 *et seq.*, and 1381 *et seq.*, claiming a period of disability that began on September

18, 2018 [Tr. 15, 195–96].  After his application was denied initially and upon reconsideration,

---

[1]      Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.  *See* 42 U.S.C. § 405(g).

Plaintiff requested a hearing before an ALJ [Tr. 108–11, 115–18, 121–22]. A telephonic hearing was held on May 12, 2020 [Tr. 30–46]. On July 27, 2020, the ALJ found that Plaintiff was not disabled [Tr. 12–24]. The Appeals Council denied Plaintiff's request for review on January 21, 2021 [Tr. 1–3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on March 22, 2021, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.  ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since September 18, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease, coronary artery disease, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), which consists of lifting and carrying up to 20 pounds occasionally and 10 pounds frequently. He is limited to occasional balancing, kneeling, stooping, crouching, crawling, and climbing ramps and stairs, but never climbing of ladders, ropes, or scaffolds. He should avoid exposure to extreme temperatures.

2

6.  The claimant is capable of performing past relevant work as a parts manager.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from September 18, 2018, through the date of this decision (20 CFR 404.1520 (f) and 416.920(f)).

[Tr. 18–24].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).  It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently.  *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).  Additionally,

3

the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

4

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

5

## V.    ANALYSIS

Plaintiff raises three arguments on appeal.  First, Plaintiff claims the ALJ failed to fully and fairly develop the administrative record because she did not obtain additional medical records that Plaintiff claims would have supported a finding of disability.  Second, Plaintiff contends the ALJ erroneously evaluated his subjective allegations of disabling impairments when the ALJ determined he was limited to jobs at the sedentary level or below.  Third, Plaintiff asserts the ALJ erred by failing to find he was disabled under the Medical Vocational Guidelines ("Guidelines"). For those reasons, Plaintiff asks the Court to reverse the Commissioner's final decision and issue an immediate award of benefits.  The Commissioner contends that Plaintiff's arguments are without merit because the ALJ: properly requested the medical records from the relevant medical providers that Plaintiff identified and left the record open so that Plaintiff could submit additional medical records; properly considered the record as a whole in formulating Plaintiff's RFC; and properly determined that Plaintiff could perform his past relevant work, meaning the Guidelines are inapplicable in this case.  Having reviewed this matter and after considering the parties' arguments, the Court finds Plaintiff has not presented a valid basis for disturbing the Commissioner's final decision, which is supported by substantial evidence.

### A.    The ALJ's Development of the Record

Plaintiff argues that the ALJ failed to fully and fairly develop the administrative record in this case pursuant to 20 C.F.R. § 404.1512(b).  Plaintiff contends that evidence in the administrative record demonstrates that additional medical evidence from three hospitals— Tennova Healthcare-Cleveland, Parkridge Medical Center, and Erlanger Health System—"might have" altered the ALJ's final determination had the evidence been incorporated into the administrative record [Doc. 14 p. 8 (citing Tr. 304–06)].

6

Specifically, Plaintiff refers to medical treatment records related to his spine disorders from the Pain Management Clinic at Vanderbilt University Medical Center [*Id.* (citing Tr. 400–24)]. Plaintiff claims a provider noted in a February 12, 2019 office note that Plaintiff's pain was primarily located in his low back, which Plaintiff described as an achy, dull, and burning pain that radiated mostly down his right leg [*Id.* (citing Tr. 400)]. Plaintiff states that these records indicated he had various other issues, including degeneration of intervertebral disc of lumbar region and chronic bilateral low back pain with bilateral sciatica [*Id.* (citing Tr. 402)]. In addition, Plaintiff states that he was assessed as having chronic low back pain with radiation into the posterior thighs; that thoracic imaging showed multilevel lumbar spine degenerative changes; and that he was also found to have disc space narrowing with endplate sclerosis at L5/S1 as well as L2/L3, L3/L4, L4/L5 and lower thoracic spine degenerative type changes [*Id.* at 8–9 (citing Tr. 403–04)]. Plaintiff states that his subjective complaints and the above objective medical evidence obligated the ALJ to further develop the administrative record pursuant to 20 C.F.R. § 404.1512(b) for at least the 12 months prior to the filing of his disability applications and before determining that he was not disabled.

In response, the Commissioner argues that, although the ALJ has a duty to develop the administrative record, it is ultimately Plaintiff's burden to submit evidence establishing his alleged disability [Doc. 16 p. 7]. The Commissioner points out that the ALJ did request medical records from every treating medical provider that Plaintiff provided notice of prior to his hearing [*Id.* (citing Tr. 221–25, 252–53, 266, 269–70, 293)]. As for the three hospitals Plaintiff now asserts the ALJ failed to obtain records from, the Commissioner notes Plaintiff did not notify the ALJ of any potential records from these hospitals until the hearing—which was five business days after the deadline for submitting outstanding medical records [*Id.* at 7–8]. The Commissioner also notes

that, despite Plaintiff failing to abide by the regulatory deadline, the ALJ granted Plaintiff ten additional days to submit any outstanding records and when Plaintiff still did not file any records within the ten days, the ALJ granted an additional extension [*Id.* at 8]. Despite the extensions, the Commissioner notes Plaintiff has never submitted the medical records from the three hospitals or explained why he has failed to do so [*Id.*]. Finally, the Commissioner notes that, at the hearing, Plaintiff's counsel stated he was unaware if these records were even material [*Id.* (citing Tr. 33–34)]. For these reasons, the Commissioner argues that the ALJ did not err and remand for the ALJ to obtain these records is unwarranted [*Id.*].

After reviewing the parties' arguments, the applicable regulations, and the record in this case, the Court finds the ALJ did not err by failing to request or obtain records from the three hospitals. 20 C.F.R. §§ 404.1512(a) and 416.912(a) provide:

> In general, you[, the claimant,] have to prove to us[, the SSA,] that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled. This duty is ongoing and requires to you disclose any additional related evidence about which you become aware. This duty applies at each level of the administrative review process . . . .

As Plaintiff notes, however, 20 C.F.R. §§ 404.1512(b)(1) and 416.912(b)(1) require the ALJ to develop a claimant's complete medical history for at least the 12 months preceding the month in which a disability application is filed, unless there is reason to believe development of an earlier period is necessary or unless the claimant states that his or her disability began less than 12 months prior to the filing of a disability application. Further, the SSA will make every reasonable effort to help a claimant get medical evidence from his or her own medical sources and entities that maintain the claimant's medical sources' evidence when the SSA is given permission to request such reports. *See* 20 C.F.R. §§ 404.1512(b)(1), 416.912(b)(1)

8

In this context, "every reasonable effort" means

> that [the SSA] will make an initial request for evidence from your medical source or entity that maintains your medical source's evidence, and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one follow-up request to obtain the medical evidence necessary to make a determination . . . .

20 C.F.R. §§ 404.1512(b)(1)(i), 416.912(b)(1)(i).

Here, the SSA requested medical records from every treating medical provider for which Plaintiff provided notice [Tr. 221–25, 252–53, 266, 269–70, 293]. Initially, Plaintiff did not identify the three hospitals noted in his brief as his medical providers, and Plaintiff did not comply with the SSA's rules requiring the ALJ be advised of all outstanding medical records five business days prior to the administrative hearing [Tr. 15–16]. *See* 20 C.F.R. §§ 404.935, 416.1435 (requiring a claimant to "inform [the SSA] about or submit any written evidence . . . no later than 5 business days before the date of the scheduled hearing"). Plaintiff waited until the administrative hearing to inform the ALJ that there were outstanding medical records [Tr. 15, 33]. Failure to follow the five-business-day-notice requirement permits the ALJ to decline to consider obtaining outstanding evidence except in certain circumstances. *See* 20 C.F.R. §§ 404.935(a)–(b), 416.1435(a)–(b) ("If you do not comply with this requirement, the [ALJ] may decline to consider or obtain the evidence" unless an enumerated exception applies). Since Plaintiff did not comply with the requirement and does not assert any of the listed exceptions apply, the ALJ was not required to consider or obtain the evidence.

In any case, the ALJ granted Plaintiff an additional ten days to submit the outstanding records [Tr. 15, 34]. Plaintiff did not provide any additional records in that time, and the ALJ granted another extension [Tr. 15]. After the expiration of the second extension, Plaintiff still had

9

not submitted additional medical records nor made a request for a third extension, and the ALJ closed the administrative record [Tr. 15–16]. Plaintiff omits any explanation for why he never submitted the outstanding medical records to the ALJ or why he did not request an additional extension. The ALJ was not required to grant Plaintiff an extension, let alone two extensions. Plaintiff may not now complain that the ALJ did not obtain, or consider, the evidence when he missed the deadline for notifying the ALJ of the evidence and otherwise failed to submit the evidence within the discretionary window permitted by the ALJ.

The Court also briefly notes—although Plaintiff did not raise this point—that Plaintiff could have requested that this Court remand the issue under 42 U.S.C. § 405(g) for additional consideration of the evidence before the Commissioner. Specifically, § 405(g) states,

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

Evidence is "material" only if there is "a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence." *Caudill v. Comm'r of Soc. Sec.*, No. 4:20-CV-00152-JHM, 2022 WL 526236, at *4 (W.D. Ky. Feb. 22, 2022) (quoting *Ferguson v. Comm'r*, 628 F.3d 269, 276 (6th Cir. 2010)). As for "good cause," if the new evidence existed at the time of the ALJ's decision, "good cause" is demonstrated by showing "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (quoting *Foster v. Comm'r*, 279 F.3d 348, 357 (6th Cir. 2001)); *see also Sonya B. v. Kijakazi*, No. 5:21-cv-00185-LLK, 2022 WL 3268743, at *2 (W.D. Ky. Aug. 10, 2022).

To the extent Plaintiff implicitly argues the records are "additional evidence" that should

10

have been "taken before the Commissioner," the Court finds Plaintiff has failed to show the "new evidence" is "material" or that there is otherwise "good cause" for the failure to submit it to the ALJ. Plaintiff's counsel, himself, stated at the disability hearing that he was unsure whether these records would even be material [Tr. 33–34]. Regardless, the Court finds good cause does not exist as—other than arguing the ALJ should have obtained the records—Plaintiff has failed to present a reason for his failure to submit these records to the ALJ by the five-business-day deadline or within the two extensions that the ALJ granted thereafter. The Court therefore finds no error in the ALJ closing the administrative record after affording Plaintiff multiple opportunities to submit outstanding records.

## B.     The ALJ's Evaluation of Plaintiff's Subjective Symptoms and RFC Finding

Plaintiff contends the ALJ committed reversable error in determining his RFC because she improperly evaluated his subjective symptoms [Doc. 14 p. 9–11]. Plaintiff claims that, had the ALJ appropriately evaluated his subjective allegations of disabling impairments, he would have been limited to jobs at the sedentary level or below [*Id.* at 9]. Plaintiff points to his hearing testimony, in which he averred that he could sit in a straight chair for only five minutes at a time and only ten to fifteen minutes total in an eight-hour period of time; he could stand for only five to ten minutes at a time and not much more than fifteen minutes total in an eight-hour workday; and he could only walk about 200 feet before having to stop [*Id.* at 10 (citing Tr. 41)]. Plaintiff argues that his hearing testimony is consistent with objective medical findings, including x-ray findings of multilevel lumbar spine degenerative changes including disc space narrowing with endplate sclerosis at L5/S1 as well as L2/L3, L3/L4, L4/L5 and lower thoracic spine degenerative type changes [*Id.* (citing Tr. 404)]. He points out that his spine disorder symptoms were so severe that he must use a spinal cord stimulator implant [*Id.*]. Plaintiff states that, to find he was limited

11

to a reduced range of light work, the ALJ must have discredited Plaintiff's testimony, but Plaintiff argues an adverse credibility finding of his testimony lacks the support of substantial evidence [*Id.* at 10–11].

In response, the Commissioner maintains that the ALJ's RFC determination is supported by substantial evidence and, as part of the determination, the ALJ properly determined that Plaintiff's subjective allegations were inconsistent with the record as a whole, including the medical opinions, Plaintiff's medical treatment, and the medical evidence [Doc. 16 p. 9]. For the reasons discussed below, the Court finds the ALJ's evaluation of Plaintiff's subjective allegations and the resulting RFC determination were appropriate in this case and are otherwise supported by substantial evidence.

As a threshold matter, a claimant's subjective complaints are but one of many factors an ALJ is to consider when making the RFC finding. *See* 20 C.F.R. §§ 404.1545(a)(3) & 416.945(a)(3). When a disability determination that would be fully favorable to the plaintiff cannot be made solely based on the objective medical evidence, an ALJ must analyze the symptoms of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Rulings 20 C.F.R. §§ 404.1529(c)(3) & 404.929(c)(3):

> In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so, then 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

12

*Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994) (citing *Jones v. Sec'y, Health & Hum. Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991); *see also Chopka v. Saul*, No. 5:18CV945, 2019 WL 4039124, at *6 (N.D. Ohio Aug. 27, 2019).

The Social Security Administration has clarified "that subjective symptom evaluation is not an examination of an individual's character . . . ." SSR 16-3p, 2017 WL 5180304, *2 (S.S.A. Oct. 25, 2017) (effective Mar. 28, 2016); *see Davis v. Comm'r of Soc. Sec. Admin.*, No. 3:19-CV-117, 2020 WL 3026235, at *6 (S.D. Ohio June 5, 2020), *report and recommendation adopted sub nom.,* No. 3:19-CV-117, 2020 WL 6273393 (S.D. Ohio Oct. 26, 2020) (discussing SSR 16-3p). When evaluating a claimant's subjective complaints, the Social Security Administration "will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them." SSR 16-3p.

The ALJ must consider certain factors when evaluating a claimant's alleged symptoms, including complaints of pain. Those factors are:

> (i) the claimant's daily activities;
>
> (ii) the location, duration, frequency, and intensity of the pain or other symptoms;
>
> (iii) precipitating and aggravating factors;
>
> (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms;
>
> (v) treatment, other than medication, a claimant receives or has received for relief of pain or other symptoms;
>
> (vi) any measures the claimant takes or has taken to relieve the pain or other symptoms; and

13

(vii) other factors concerning the claimant's functional limitations
and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529 & 416.929. The decision need not contain discussion and citations as to every possible factor to be sufficiently specific. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004).

An ALJ's determination of a claimant's credibility regarding statements concerning his symptoms is to be afforded "great weight and deference," and courts "are limited to evaluating whether . . . the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record." *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 649 (6th Cir. 2013) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003)); *see also Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character"); *Barber v. Kijakazi*, No. 1:20-0064, 2022 WL 209268, at *6 (M.D. Tenn. Jan. 24, 2022), *report and recommendation adopted*, 2022 WL 853208 (M.D. Tenn. Mar. 22, 2022) (explaining that although the Commissioner removed the term "credibility" when SSR 16-3p was implemented, "there appears to be no substantive change in the ALJ's analysis and nothing to indicate that case law pertaining to credibility evaluations" has been abrogated (citation omitted)). Factual determinations are the domain of the ALJ, and "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

In this case, the ALJ found:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), which consists of lifting and carrying up

14

to 20 pounds occasionally and 10 pounds frequently. He is limited to occasional balancing, kneeling, stooping, crouching, crawling, and climbing ramps and stairs, but never climbing of ladders, ropes, or scaffolds. He should avoid exposure to extreme temperatures.

[Tr. 19]. In making this RFC determination, the ALJ found:

[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not convincing to the extent they are inconsistent with the above residual functional capacity assessment.

[*Id.* at 22].

An ALJ may consider the inconsistencies between a claimant's subjective allegations and the medical evidence—as the ALJ did here when discounting Plaintiff's allegations concerning the severity of his impairments [Tr. 22]. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("The ALJ reasonably discounted [Plaintiff's] testimony concerning the severity of her pain because her testimony was inconsistent with the medical evidence in the record."); *see also* Social Security Ruling 16-3p ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with the objective medical evidence and the other evidence."). The Court turns now to the specific factors discussed by the ALJ.

1.    *Medical Opinions*

In evaluating Plaintiff's subjective allegations and formulating the RFC, the ALJ considered the medical opinions of record [Tr. 21–22]. *See* 20 C.F.R. §§ 404.1529(c)(3)(vii) & 416.929(c)(3)(vii). In February 2019, William Holland, M.D. ("Dr. Holland"), examined Plaintiff and opined he could sit for 6 to 8 hours, stand for 4 to 6 hours, walk for 4 to 6 hours, and lift 20 pounds occasionally and 5 to 10 pounds frequently [Tr. 397]. Also in February 2019, Thomas

15

Thrush, M.D. ("Dr. Thrush"), reviewed Plaintiff's medical records and opined he could perform a range of light work [Tr. 53–57]. Plaintiff was found to be able to lift 20 pounds occasionally and 10 pounds frequently, sit for 6 hours, and stand and walk for 6 hours; he could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and could never climb ladders, ropes, or scaffolds; he must avoid concentrated exposure to extreme temperatures [Tr. 54–55]. In August 2019, Anita Johnson, M.D. ("Dr. Johnson"), a state agency medical consultant reviewed Plaintiff's updated medical records and opined that Plaintiff could perform a range of light work with occasional postural activities [Tr. 84–87].

The applicable regulations for the evaluation of medical opinions have been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *585–57 (Jan. 18, 2017). The ALJ must explain how she considered the factors of supportability and consistency, which are the two most important factors in determining the persuasiveness of a medical source's medical opinion or prior administrative medical finding. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may but is generally not required to explain how she considered the other factors. *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). As Plaintiff's application was filed after March 27, 2017, the revised regulations apply.

In this case, the ALJ found Dr. Holland's medical opinion and the prior administrative medical findings persuasive [Tr. 21–22]. The ALJ found Dr. Holland's opinion persuasive, "as it is supported by essentially normal findings of non-antalgic gait and negative straight leg raising" [Tr. 22]. The ALJ found Dr. Holland's opinion was "consistent with other medical records, which

16

show that [Plaintiff's] spinal cord stimulator is managing his pain without narcotic medication and his pacemaker is working well" [*Id.*]. The ALJ therefore found that Plaintiff could sit for 6 hours, stand and walk for 6 hours, and lift 20 pounds occasionally and 10 pounds frequently, findings that are consistent with Dr. Holland's opinion [Tr. 19, 397].

The ALJ also considered the prior administrative medical findings and found them persuasive [Tr. 22]. The ALJ made this determination based on the findings being supported by a review and summary of the then-available medical evidence and because the findings were consistent with subsequent normal neurological and musculoskeletal examinations [*Id.*]. The ALJ found Plaintiff could perform light work with occasional postural activities without temperature extremes and climbing ladders, ropes, and scaffolds, consistent with the prior administrative findings of Drs. Thrush and Johnson [Tr. 19, 54–55, 84–85]. The Court finds the ALJ appropriately evaluated the medical opinion and prior administrative medical findings pursuant to the relevant SSA rules and regulations, and it was therefore appropriate for the ALJ to rely on them when evaluating Plaintiff's subjective allegations and determining his RFC.

### 2. *Plaintiff's Treatment History*

The ALJ also considered the treatment Plaintiff received for his alleged disabling impairments [Tr. 21–22]. Prior to his alleged onset date, Plaintiff received a pacemaker in 2007 and a replacement in 2015 [Tr. 21]. The pacemaker was reportedly working well [Tr. 22, 431, 434, 437, 440]. Plaintiff also received a spinal cord stimulator in August 2016 that required occasional reprogramming but generally permitted Plaintiff to manage his pain without narcotics [Tr. 21–22, 395, 400]. *See Smith v. Comm'r of Soc. Sec. Admin.*, 564 F. App'x, 758, 763 (6th Cir. 2014) (citing *Hardaway v. Sec'y*, 823 F.2d 922, 927 (6th Cir. 1987) (evidence that medical issues can be improved with prescribed drugs supports denial of disability benefits)). The Court finds

17

the ALJ appropriately relied on reports that these treatments were effective and that, by the time of Plaintiff's alleged onset date and continuing through the date of the ALJ's decision, his treatment was relatively conservative.

### 3. *Objective Medical Evidence*

The ALJ also appropriately considered the objective medical findings, including clinical findings, and found they did not support Plaintiff's subjective complaints [Tr. 21–22]. *See Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1529); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726–27 (6th Cir. 2013) (citations omitted) ("[T]he regulations require the ALJ to evaluate the medical evidence to determine whether a claimant is disabled."). On physical examination, Plaintiff retained normal gait, normal ranges of motion, full strength, and intact sensation; straight leg raising testing was negative; and Plaintiff's lungs were clear [Tr. 387, 396–97, 402, 407, 411, 430, 433, 436, 439]. Despite reporting disabling pain, Plaintiff routinely appeared to be in no acute distress [Tr. 387, 430, 433, 436, 439]. Plaintiff's lumbar x-rays showed degenerative changes, but the state agency medical consultants considered the x-rays and found Plaintiff could still perform a range of light work [Tr. 22, 56, 86, 398, 404]. Thus, the Court concludes it was appropriate for the ALJ to rely on the objective medical findings, which she found to be inconsistent with the alleged severity of Plaintiff's symptoms [Tr. 21–22].

### 4. *Plaintiff's Reported Daily Activities*

Finally, the ALJ appropriately considered Plaintiff's daily activities [Tr. 20, 22]. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). Plaintiff reportedly retained the ability to care for his pet, prepare meals, mow with a riding lawnmower, drive, shop, spend time with his family, and take vacations [Tr. 242–44, 261–63]. The Court finds it was appropriate for the ALJ to rely

18

on Plaintiff's reported daily activities, which she found to be inconsistent with his subjective allegations [Tr. 20, 22].

The Court finds the ALJ's analysis of Plaintiff's alleged disabling impairments was appropriate in this case. The ALJ engaged in a multi-faceted evaluation of Plaintiff's subjective allegations and considered, among other things, the medical opinion evidence and prior administrative findings, Plaintiff's treatment history, the objective medical evidence, and Plaintiff's reported daily activities. After considering those factors in combination, the ALJ properly discredited the alleged severity of Plaintiff's impairments, finding Plaintiff's allegations were inconsistent with and unsupported by the record as a whole. The ALJ's evaluation and her subsequent RFC findings are supported by substantial evidence, and the Court therefore finds no error in this determination.

### C. ALJ's Alleged Failure to Find Plaintiff Disabled Under the Guidelines

Finally, Plaintiff argues the ALJ erred by not finding him disabled pursuant to 20 C.F.R. Appendix 2 to Subpart P of Part 404—Medical-Vocational Guidelines Section 201.14 [Doc. 14 p. 11]. Plaintiff broadly contends that the ALJ's RFC determination is unsupported by the evidence, including the objective medical findings, and that Plaintiff's own stated physical limitations demonstrate he is limited to sedentary level work or below [*Id.*]. Plaintiff then argues that had the ALJ applied the "grid rules" with a sedentary exertional level RFC, he would have been entitled to a determination of "disabled" at age 50 as a matter of law [*Id.* at 12 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.14 (directing a finding of "disabled" for an individual closely approaching advanced age (age 50–54) based on a light work RFC, high school education or more, and no transferable skills))].

19

Plaintiff's argument is not well-taken as the grids do not apply in this case. Here, the ALJ resolved the disability claim at step four of the sequential evaluation, when she found Plaintiff could perform his past relevant work as a parts manager as that work is generally performed in the national economy. *Adkins v. Colvin*, No. 2:13-CV-210, 2014 WL 4063401, at *2 (E.D. Tenn. Aug. 14, 2014) (noting the ALJ determined the plaintiff was not disabled at step four based on finding that plaintiff could perform past work as auditing clerk) (citation omitted). "The grids do not apply to step four of the sequential analysis but apply at step five." *Id.* (citing *Fetters v. Comm'r of Soc. Sec.,* 160 F. App'x 462, 463 (6th Cir. 2005) ("Use of the Grids is not required at step four of the five-step sequential process prescribed by 20 C.F.R. § 404.1520 for evaluating disabilities.") (citing *Smith v. Sec. of Health & Human Servs.,* 893 F.2d 106, 110 (6th Cir. 1989) (finding grids inapplicable because ALJ found that claimant could perform past relevant work and therefore was not disabled))). While Plaintiff generally contends that the grids should have been applied because the ALJ erred in determining that he could perform light work, as discussed in the preceding section, the ALJ's RFC determination was appropriate and supported by substantial evidence. Because the ALJ properly determined that Plaintiff could perform his past relevant work at step four, the disability inquiry ends there and need not progress to an analysis under the grids. *See* 20 C.F.R. § 404.1520(f). Therefore, Plaintiff's argument fails.

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Administrative Record [**Doc. 13**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 15**] will be **GRANTED**.  The decision of the Commissioner will be **AFFIRMED**.  The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge